[No. B040937. Second Dist., Div. Four. Mar. 6, 1990.]

In re Marriage of RUTH J. and STEPHEN R. POWERS, JR. STEPHEN R. POWERS III, as Executor, etc., Respondent, v. STEPHEN R. POWERS, JR., et al., Appellants.

628

630

**COUNSEL**

Bodkin, McCarthy, Sargent & Smith, Henry G. Bodkin, Jr., William G. Lieb, James K. Hahn, City Attorney, Edward C. Farrell and David J. Oliphant, Assistant City Attorneys, for Appellants.

Adrian Kuyper, County Counsel (Orange), and Donald H. Rubin, Deputy County Counsel, as Amici Curiae on behalf of Appellants.

Thomas Trent Lewis for Respondent.

**OPINION**

**WOODS (A. M.), P. J.**—This is an appeal from a postjudgment order in a marital dissolution action. The appellants are Stephen Powers, Jr. (hus-

band), and the Water and Power Employees Retirement Disability Death Benefit Insurance Plan of the Department of Water and Power of the City of Los Angeles (the Department). Respondent is the estate of Ruth Powers (wife). The order appealed from grants to wife's estate her community property interest in husband's retirement benefits by virtue of the trial court's retroactive application of Civil Code section 4800.8 pursuant to *In re Marriage of Taylor* (1987) 189 Cal.App.3d 435 [234 Cal.Rptr. 486]. At issue here is the propriety of the trial court's action.

Husband and wife were married on April 23, 1949. Husband was employed by the Department beginning on August 2, 1957, and acquired certain rights in the Department's retirement plan beginning March 1, 1958.[1]

The parties separated on June 10, 1979, and a petition of dissolution was filed by wife on January 22, 1982. An interlocutory judgment of dissolution was filed on August 1, 1983. In it the court expressly reserved jurisdiction over both husband's and wife's retirement plans.[2]

With respect to husband's retirement plan, paragraph 9 of the judgment stated:

"The Court expressly reserves jurisdiction over all retirement and other deferred compensation benefits of [husband] under the Water and Power Employees Retirement Plan (including but not limited to the value, if any, of the health insurance premium feature thereof) to determine the nature, extent and value thereof and the division between the parties of the community property interest therein.

"[Wife] and [husband] married on April 23, 1949 and separated on June 10, 1979.

"The Board of Administration of the Water and Power Employees Retirement Plan (hereafter called 'Board') has been joined as a claimant in this proceeding pursuant to Civil Code Section 4363.1 and is responsible for administering the retirement benefits provided for by said Plan, pursuant to Section 220.1 of the Charter of the City of Los Angeles.

---

[1] The Department was joined in the underlying action by order of the trial court on February 25, 1982.

[2] Disposition of wife's pension plan is not at issue here.

"[Husband] is currently employed by the Department of Water and Power of the City of Los Angeles and is an active member of the Water and Power Employees Retirement Plan, commencing membership in the Plan on July 1, 1955.

"[Wife] is ordered to keep the claimant Board advised as to her current address at all times.

"In accordance with Civil Code Section 4800, the Court expressly reserves jurisdiction over any and all retirement benefits which are due, or may be due, to the parties under [husband's] membership in the Water and Power Employees Retirement Plan.

"The Board shall disburse no funds under the Plan without further order of this Court."

On December 16, 1983, wife died.

In 1985, husband's son, who was executor of wife's estate, informed husband that the estate might claim an interest in husband's pension. Husband consulted Department lawyers who advised him that such an action by the estate would not be successful. The advice given husband was correct under a judicially developed rule, called the terminable interest rule. Under this rule a wife's community property interest in her husband's pension terminated at her death.

In reliance upon this advice, husband filed an irrevocable intention to retire. His retirement became effective on April 1, 1987. In 1985, husband married Judith Powers and was married to her at the time of his retirement. She had previously taken an early retirement from the Department at a reduced level of benefits. Both retirements were premised on an expectation that husband would have an unlimited interest in his pension with which to support them.

Effective January 1, 1987, the Legislature adopted Civil Code section 4800.8 abrogating the terminable interest rule. In February 1987, Division Four of the First Appellate District filed *In re Marriage of Taylor, supra*, 189 Cal.App.3d 435, giving the section retroactive application.

Based on those developments, in October 1987, wife's estate sought trial on the reserved issue of wife's community property interest in husband's

pension.[3] The motion was unsuccessfully opposed by husband and the Department. Both husband and the Department then moved for summary judgment challenging, inter alia, retroactive application of the statute. Their motions were denied, the court deciding that it was compelled to follow *Taylor.*

Trial was held on December 8, 1988. Husband and the Department again raised the issue of retroactivity as they had on the summary judgment motion. The trial court, too, applied the statute retroactively.[4] Subsequently, by written order, the court ordered the Department to pay to wife's estate $38,191.01 as benefits due wife from husband's pension from April 1, 1987, the date of his retirement, to December 31, 1988. The court also ordered the Department to pay the estate .37839 percent of husband's pension commencing on January 1, 1989, and to continue until his death.

Husband and the Department both appeal this order. We affirm.

I

■ ■■■■ The principal issue before us is the propriety of retroactive application of Civil Code section 4800.8 in this case.[5] Before discussing the specific contentions, it is necessary to examine both the change in the law effected by section 4800.8 and the applicable principles of retroactivity.

Prior to enactment of section 4800.8, the terminable interest rule governed disposition of community property interests in retirement benefits upon the death of either of the spouses in dissolution proceedings. The rule derived from two cases, *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649], and *Waite* v. *Waite* (1972) 6 Cal.3d 461

---

[3] Although husband and wife's son was substituted as petitioner for wife to pursue the action, we refer to her for convenience.

[4] The trial court permitted husband to make various offers of proof regarding evidence related to his reliance on the former law and his laches argument. The court then sustained objections to the evidence on grounds of relevance. We discuss this in part II of this opinion.

[5] Wife argues that the order appealed from is unreviewable because husband and the Department failed to request a statement of decision pursuant to Code of Civil Procedure section 632. This contention is without merit.

Code of Civil Procedure section 632 does not require a statement of decision as a prerequisite to an appeal; rather, it provides that "written findings of facts and conclusions of law shall *not* be required." (Code Civ. Proc., § 632, italics added.)

Unlike *In re Marriage of Ditto* (1988) 206 Cal.App.3d 643 [253 Cal.Rptr. 770], where there was neither a statement of decision nor a transcript of proceedings to enable the reviewing court to determine what law the trial court employed, the reporter's transcript before us adequately sets forth the basis of the court's ruling. *In re Marriage of Green* (1989) 213 Cal.App.3d 14 [261 Cal.Rptr. 294], is also inapposite as in that case, too, apparently, there was neither a statement of decision nor transcript. (*Id.*, at p. 20.)

[99 Cal.Rptr. 325, 492 P.2d 13]. ■ "Briefly stated, this judicially created rule recognize[d] that an interest in a retirement plan traceable to contributions of community funds or to community labor constitutes community property; however, the interest of the nonparticipant spouse does not extend to benefits payable after the death of either spouse." (*Chirmside v. Board of Administration* (1983) 143 Cal.App.3d 205, 208 [191 Cal.Rptr. 605], fn. omitted.) There were two distinct aspects to the rule. " '[T]he first aspect . . . postulates that the community interest in accrued benefits does not extend to pension benefits payable following the death of the employee spouse. Thus, the nonemployee spouse may not claim pension benefits earned or accrued during marriage if the employee spouse designates a third party to receive them after his death. . . . [¶] A second aspect of the Terminable Interest Doctrine postulates that the nonemployee spouse's interest in pension benefits terminates upon the death of the nonemployee spouse, so that the nonemployee spouse may not bequeath these benefits by will. . . .' [Citation.]" (*Bowman v. Bowman* (1985) 171 Cal.App.3d 148, 152 [217 Cal.Rptr. 174], quoting Culhane, *Terminable Interest Doctrine* (1984) 14 Sw.U.L.Rev. 613, 615-616, fns. omitted.) ■ With respect to this second aspect of the rule, it should be noted that community property interests are ordinarily inheritable. (See Prob. Code, § 100; see, e.g., *Sousa v. Freitas* (1970) 10 Cal.App.3d 660, 665 [89 Cal.Rptr. 485].)

The terminable interest rule was subject to considerable appellate and academic criticism. (*In re Marriage of Taylor, supra*, 189 Cal.App.3d at p. 440.) Addressing what was perceived to be the major inequity of the rule, then-Justice Kaus wrote in *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642 [115 Cal.Rptr. 184]: "We do not believe the rule which we must follow is fair. [Husband's] pension rights constitute a bundle to which [wife], as a partner in the community during the years of marriage contributed her equal share. Why should she be deprived of her right to any single stick in the bundle? [Citation.]" (*Id.*, at p. 656, fn. omitted.)

In 1987, the Legislature enacted Civil Code section 4800.8 which empowered a court to make "whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, whether public or private, including all survivor and death benefits . . . ." (§ 4800.8.)[6] The statute then set forth, illustratively, two kinds of possible orders to effect this purpose. Subdivision (a) permitted the court to "[o]rder the division of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 4800." Subdivision (b) permitted the court to "[o]rder a party to elect a survivor

---

[6] Section 4800.8 was subsequently amended in 1988 to add two new subdivisions which do not concern us here.

benefit annuity or other similar election for the benefit of the other party, as specified by the court, in any case in which a retirement plan provides for such an election." In an uncodified section, the Legislature expressed its intent "to abolish the terminable interest rule set forth in Waite v. Waite, 6 Cal.3d 461, and Benson v. City of Los Angeles, 60 Cal.2d 355, in order that retirement benefits shall be divided in accordance with Section 4800." (Stats. 1986, ch. 686, § 2.)

Legislative history in the form of an analysis of the statute by the Assembly Committee on Judiciary sets forth the various concerns behind the change in law. First, the analysis noted the comment of the bill's sponsor, the California Commission on the Status of Women, that under the terminable interest rule a spouse in a long-term marriage ending in a dissolution could be deprived of any interest in the employee spouse's survivor benefits upon his death in favor of a short-term spouse. The analysis also noted that the rule had been criticized as creating an unequal division of community property leading to a windfall profit to the employee spouse and his or her new spouse. Additionally, the analysis observed that a major justification for the rule was that prior federal law accorded pension plans special tax status. This special status was protected by the "anti-alienation" or alternative payee clause in the pension contract. However, changes in federal law had made clear that payment of death or pension benefits to a former spouse would not violate that clause, rendering the terminable interest rule anachronistic. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3343 (1985-1986 Reg. Sess.).) ▪ It appears, therefore, that the overriding purpose of section 4800.8 was to rectify a state of law considered unjust.

It was precisely this recognition of the unjust state of prior law that led the court in *In re Marriage of Taylor, supra,* 189 Cal.App.3d 435, to declare section 4800.8 retroactive.

In *Taylor,* wife was awarded a specified percentage of husband's judicial retirement benefit subject to termination upon her death or his. While the case was on appeal, section 4800.8 was enacted and the reviewing court asked the parties to brief retroactivity.

Husband argued that he and his second wife had vested contractual and statutory rights requiring his retirement plan to pay his second wife one-half of his retirement benefits upon his death. He contended that retroactive application of section 4800.8 would impair those rights by reducing her benefits since she would now have to share them with his ex-spouse. (189 Cal.App.3d at p. 441.)

The former spouse maintained the right of the parties affected by the terminable interest rule involved events which had not yet occurred. The court agreed: "The rights to retirement benefits at issue in this case are retirement rights which will only arise on the happening of events in the future. When our Supreme Court first held that retirement rights comprise a community asset subject to division in a dissolution proceeding, it held that its decision would apply retroactively 'to any case in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights.' (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 851 . . . .) This case, of course, is still undergoing appellate review." (*In re Marriage of Taylor, supra*, 189 Cal.App.3d at p. 441.)

The court then examined the applicability of two Supreme Court cases, *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354], and *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253], which had declined to apply retroactively two statutes that had also affected marital property rights.

In *Buol*, the court declined to apply retroactively section 4800.1 which requires an agreement in writing to prove, upon dissolution of marriage, that property taken in joint tenancy form is the separate property of one spouse. (*In re Marriage of Buol, supra*, 39 Cal.3d at pp. 763-764.) The court began its analysis with the observation that retroactive application to the case before it would deprive the wife of her separate property interest in the family home which she had, consistent with prior law, established by an oral agreement. (*Id.*, at p. 757.)

The court also observed, however, that the impairment of a property right by retroactive application of a statute did not, of itself, violate due process of law. "Vested rights are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people. [Citation.]" (39 Cal.3d at pp. 760-761.) Citing its earlier decision of *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal.Rptr. 427, 546 P.2d 1371], the *Buol* court set forth the relevant factors which determine "whether a given provision contravenes the due process clause[;] 'the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions.' "

(*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761, citing *In re Marriage of Bouquet, supra,* at p. 592.)

Significantly, however, the court, again citing *Bouquet,* observed that "[w]here 'retroactive application is necessary to subserve a sufficiently important state interest' (*Bouquet, supra,* 16 Cal.3d at p. 593), the inquiry need proceed no further. [Citation.]" (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761.)

The court also noted: "In both *Bouquet* and *Addison* [v. *Addison* (1965) 62 Cal.2d 558 (43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391)] we identified an important state interest in the 'equitable dissolution of the marital relationship' and stressed that retroactive application was necessary to remedy 'the rank injustice of the former law.' (*Bouquet, supra,* 16 Cal.3d at p. 594; *Addison, supra,* 62 Cal.2d at p. 567.) Thus, these cases support the proposition that the state's paramount interest in the equitable dissolution of the marital partnership justifies legislative action abrogating rights in marital property where those rights derive from manifestly unfair laws. No such compelling reason exists for applying section 4800.1 retroactively. Section 4800.1 cures no 'rank injustice' in the law and, in the retroactivity context, only minimally serves the state interest in equitable division of marital property, at tremendous cost to the separate property owner." (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761.)

Likewise, in *In re Marriage of Fabian, supra,* 41 Cal.3d 440, the absence of a "rank injustice" which would have been cured by retroactive application of section 4800.2, providing for reimbursement of separate property contributions to community assets absent a signed writing waiving such reimbursement, was cited by the court as grounds against retroactive application of the statute. (*In re Marriage of Fabian, supra,* at p. 449.)

By contrast, the *Taylor* court determined that "the law prior to the enactment of section 4800.8 can be viewed as unfair and as preserving an injustice. . . . [¶] Statutes enacted to cure an injustice in the former law and to promote the state interest in equitable division of community property have been allowed to apply retroactively. [Citations.] We similarly conclude that section 4800.8 may be applied to this case." (*In re Marriage of Taylor, supra,* 189 Cal.App.3d at pp. 442-443.)

*Taylor* was followed by *Estate of Austin* (1988) 206 Cal.App.3d 1249 [254 Cal.Rptr. 372]. *Austin* involved the question of whether decedent's community property interest in her husband's pension and profit-sharing plans

should be subject to the then-existing inheritance tax on transfers between spouses.

The probate court excluded the value of the pension and profit-sharing plans from the order fixing the inheritance tax in reliance on *Estate of Allen* (1980) 108 Cal.App.3d 614 [166 Cal.Rptr. 653] which "[held] the community property interest of a deceased nonemployee spouse in a private pension plan is a 'terminable interest,' . . . which survived only so long as either spouse lived. [Citations.]" (*Estate of Austin, supra,* 206 Cal.App.3d at p. 1252.)

On appeal, the appellate court reversed. "[T]he *Allen* case is not valid precedent primarily because the 'terminable interest' rule has been retroactively repealed, . . ." (*Estate of Austin, supra,* 206 Cal.App.3d at p. 1252.) The *Austin* case is significant because it extends retroactive abrogation of the terminable interest rule to a situation involving the death of the nonemployee spouse. ▪ *Austin* makes clear that if the nonemployee spouse dies before the employee spouse, his or her interest in the employee spouse's pension plan does not revert to the employee spouse by operation of the terminable interest rule but becomes part of the nonemployee spouse's estate.

▪ We can conclude from our discussion that (1) abrogation of the terminable interest rule was motivated by a recognition that the rule was unfair, (2) that this recognition supported retroactive application of section 4800.8 in *Taylor* and distinguished section 4800.8 from the statutes involved in *In re Marriage of Buol, supra,* 39 Cal.3d 751, and *In re Marriage of Fabian, supra,* 41 Cal.3d 440, (3) that retroactive application also furthered the significant state interest of equitable division of marital property, and (4) that retroactivity applies to protect the nonemployee's interest in the employee spouse's pension plan upon the death of either spouse. It is with these conclusions in mind that we now turn to the arguments in the case before us. We first consider husband's arguments and then the Department's.

## II

▪ Initially, husband contends that the court was without jurisdiction to make its order because jurisdiction terminated upon wife's death in 1983 under the terminable interest rule. We disagree. There is no question that the trial court had retained jurisdiction over the plan. The court expressly reserved jurisdiction in the 1982 judgment, to characterize and divide the community property interest in husband's pension fund, and specifically provided that no funds were to be disbursed under the plan without further

order of the court. The issue here presented is whether, despite this order of the court, wife's interest in her husband's pension plan was *automatically* terminated by the terminable interest rule at the time of her death. We conclude that it was not. When the court exercised its reserved jurisdiction in 1988, Civil Code section 4800.8 had been enacted and under *Taylor* it had been given retroactive application. The legal result of such retroactive application was that the law in effect at the time of the 1988 court order made Civil Code section 4800.8 the law in effect at the time of wife's death in 1983. The trial court properly determined, therefore, that wife was entitled to her community property interest in the pension plan.

Husband also claims that the court lacked jurisdiction because the manner in which it retained jurisdiction constituted "open-ended jurisdiction to divide community interests in a pension plan" condemned as an abuse of discretion in *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 756-758 [214 Cal.Rptr. 661]. Assuming, arguendo, that this is true, it is not a jurisdictional issue in the sense that the trial court thereby loses all jurisdiction to divide the community property interests in such plans. Rather, the abuse of discretion may be corrected by requiring the trial court to make an appropriate division of the community property interests. (*In re Marriage of Ramer* (1986) 187 Cal.App.3d 263, 275-276 [231 Cal.Rptr. 647].) That is precisely what the court did here.

■ Husband next contends that, assuming jurisdiction exists, the court nonetheless erred by failing to determine the question of retroactivity in light of the various factors set forth in *In re Marriage of Buol, supra*, 39 Cal.3d at page 761. This argument fails because *Buol* itself states that if retroactivity is required to serve an important state interest, "the inquiry need proceed no further. [Citation.]" (*Ibid.*) Moreover, the important state interest identified in *Buol*, "'the equitable dissolution of the marital relationship . . .'" (*ibid.*), was specifically cited in *Taylor* as an objective of section 4800.8. (*In re Marriage of Taylor, supra*, 189 Cal.App.3d at p. 442.) Accordingly, under *Taylor*, the trial court was not required to consider the other *Buol* factors in determining the retroactivity issue.[7]

■ Next, husband maintains that retroactive application of section 4800.8 in this case is not necessary to cure a rank injustice. According to husband the injustice to which the statute was aimed was the prevention of "long term *living* spouses from being deprived of their community property interest in the other spouse's pension." This characterization ignores the fact that the terminable interest rule terminated the nonemployee's interest

---

[7]It is for this reason that the court properly sustained relevance objections to husband's proposed evidence relating to the *Buol* factors.

in the employee's pension plan on the death of either spouse. (*In re Marriage of Taylor, supra*, 189 Cal.App.3d at p. 439.) The rule not only deprived a living nonemployee spouse of such interest for his or her own subsistence upon the employee spouse's death but it also deprived the nonemployee spouse of the ability to "bequeath the benefits by will." (*Ibid.*) In enacting Civil Code section 4800.8, the Legislature intended to abrogate the entire rule. This is evident from the reference in the uncodified section of section 4800.8 to the two judicial decisions that had established both aspects of the rule, *Waite* v. *Waite, supra*, 6 Cal.3d 461, and *Benson* v. *City of Los Angeles, supra*, 60 Cal.2d 355.

It is apparent, therefore, that the injustice perceived was the entire rule, including that aspect which terminated the right of the nonemployed spouse to bequeath by will his or her community property interest in the surviving spouse's pension plan. To the extent, therefore, that *Taylor* recognized that elimination of this injustice was grounds for retroactive application of the statute, we must also apply it retroactively here. (And see *Estate of Austin, supra*, 206 Cal.App.3d at pp. 1252-1253.)[8]

For this reason we also reject husband's attempt to distinguish *Taylor* on the grounds that it dealt with the protection of the rights of a living nonemployee spouse rather than the rights of one who has predeceased the employee spouse. This is a distinction without a difference. By abrogation of the terminable interest rule the Legislature affirmed the right of the nonemployee spouse to what was his or hers by virtue of the community effort and eliminated a windfall profit to the employee spouse. This basic objective of the statute is not dependent on whether the nonemployee spouse is living or dead at the time these rights accrue.

 In this same vein, husband attempts to confine *Taylor* to its facts. In *Taylor*, retroactive application of section 4800.8 had no immediate impact upon the husband's financial picture because he had not yet begun to draw his pension and, thus, husband argues "application of § 4800.8 would not invade a then existing property right . . . ." By contrast, husband contends that in our case his reliance on prior law led him to retire with the expectation that his pension would be adequate to support him and his current spouse. Retroactive application of the statute, requiring him not only to pay a percentage of his pension benefits to wife's estate henceforth but also to reimburse a percentage of benefits already paid, would frustrate those expectations and deleteriously affect his standard of living. While we

---

[8] Amicus County of Orange advances an argument similar to husband's which, in essence, is that section 4800.8 was never intended to protect the interests of nonemployee spouses who predecease the employee spouse. Our discussion of husband's argument also disposes of this contention.

are mindful of the hardship that the trial court's order may work on husband, we nonetheless conclude that the principle of retroactivity applied in *Taylor* is equally applicable here. Application of this principle on a case-by-case basis would totally frustrate the legislative intent.

Even conceding that the benefits to which husband now lays claim would have been his by operation of former law, *Taylor* recognized that the law unjustly deprived a nonemployee spouse of what would otherwise have been hers under community property principles. (*In re Marriage of Taylor, supra*, 189 Cal.App.3d at p. 443 ["the (prior law) can be viewed as unfair and preserving an injustice."].) Thus, while husband may be deprived of an existing property interest by retroactive application of the law, that interest was secured only by unjustly depriving the nonemployee spouse of it.

As *Taylor* also observes, property rights are not immutable. (189 Cal.App.3d at p. 442.) ■ Specifically, "the state interest in equitable division of community property" is a sufficiently important interest to permit impairment of existing property interests by retroactive application of statutes promoting an equitable division of such property. (*Id.*, at p. 443.) Moreover, we read *Taylor* to stand for the proposition that where retroactivity promotes this interest, reliance on former law is an inappropriate consideration; this is clearly implied in that portion of *Taylor* which distinguishes *Buol* and *Fabian,* decisions involving statutes that did not promote the state interest of inequitable division of community property. (*In re Marriage of Taylor, supra*, at pp. 441-442.)

■ We do not think these rationales are any less compelling in the case before us than they were in *Taylor* notwithstanding the fact that retroactivity in our situation necessitates repayment of benefits already received, creating an immediate impact on husband's standard of living. Even though in *Taylor* the impact was prospective, the property interests involved here and in *Taylor* are exactly the same. The only difference is that in *Taylor* husband had not yet begun to make a present claim on that interest. In view of the reasons given in *Taylor* for retroactive application of section 4800.8, we do not think this difference is sufficient to hold *Taylor* inapplicable to this case.

■ Husband also contends that wife's claim in his pension benefits is barred by laches because of the failure of her estate to make a claim until four years after her death. In the interim husband had retired in reliance upon former law.

■ ■ ■ ■ The elements of laches are (1) the failure to assert a right, (2) for some appreciable period so as to amount to unreasonable delay, (3) which results in prejudice to the adverse party. (*Getty* v. *Getty*

(1986) 187 Cal.App.3d 1159, 1170 [232 Cal.Rptr. 603]; *Finnie* v. *Town of Tiburon* (1988) 199 Cal.App.3d 1, 14 [244 Cal.Rptr. 581].) Laches is an equitable defense, the existence of which is a matter commended to the discretion of the trial court, "and in the absence of manifest injustice or lack of substantial support in the evidence, the trial court's determination will be sustained. [Citation.]" (*Northridge Hospital Foundation* v. *Pic 'N' Save No. 9, Inc.* (1986) 187 Cal.App.3d 1088, 1101 [232 Cal.Rptr. 329]; *Miller* v. *Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].)[9]

 Husband's laches argument is defective in several respects. The first element of laches is the failure to assert a right. Prior to the enactment of section 4800.8 in 1987 and the February 1987 *Taylor* decision applying the statute retroactively, wife's estate had no enforceable right to assert. Husband cites no authority for the proposition that failure to anticipate a change in the law provides a basis for laches once the change occurs.

Although husband contends that he was prejudiced by the inaction of wife's estate, it appears that his injury was attributable in part to his own conduct.

Husband knew at the time of his wife's death that the trial court had reserved jurisdiction to determine and decide the community property interests in all of the retirement benefits. Moreover, the Department was ordered to disburse "no funds under the Plan without further order of [the] Court." Additionally, husband had been told by his son as early as 1985 that wife's estate might assert a claim against his pension. Nonetheless, husband did not return to the court for a judicial determination of his interest in the plan. Instead, relying on advice from the Department lawyers, he made an irrevocable decision to retire and accepted retirement benefits without regard to the court's reservation of jurisdiction. Under these circumstances, husband's attribution of prejudice to the estate's delay in pursuing its claim is not convincing and does not afford a basis to overturn the trial court's rejection of his claim of laches.

### III

The Department makes three arguments in its challenge to the order appealed from.

---

[9] The trial court did not expressly rule on husband's claim of laches. Under familiar appellate principles, we are required to indulge all intendments and presumptions to support the order or judgment of the court on matters as to which the record is silent. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 268, p. 276.) We invoke that principle to support the trial court's implied rejection of husband's claim.

■ Initially, the Department, joined by husband, maintains that retroactive application of section 4800.8 in this case violates federal and state constitutional guaranties proscribing the impairment of contracts. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.)

For this proposition the Department principally relies on two cases, *Allied Structural Steel Co.* v. *Spannaus* (1978) 438 U.S. 234 [57 L.Ed.2d 727, 98 S.Ct. 2716], and *Sonoma County Organization of Public Employees* v. *County of Sonoma* (1979) 23 Cal.3d 296 [152 Cal.Rptr. 903, 591 P.2d 1]. In *Spannaus,* a Minnesota statute regulating funding of pension plans would have required a steel company to increase its funding of the company's pension plan retroactively. The court found that the statute nullified "express terms of the company's contractual obligations and impose[d] a completely unexpected liability in potentially disabling amounts." (438 U.S. at p. 247 [57 L.Ed.2d at p. 738].)

In the *Sonoma County* decision, the challenged statute specifically declared null and void provisions of employment contracts between local public agencies and their employees which provided for a cost-of-living increase to those employees greater than that provided to state employees. (23 Cal.3d at pp. 304-305.)

Clearly, these cases are inapposite as they involved statutes directly affecting the contractual obligations of an employer to its employees. Section 4800.8 works no comparable impairment of pension contracts. Rather, the statute reorders property rights as between spouses so as to achieve an equitable division of community property interests in such plans. Any incidental effect on the administration of payments under such plans is justified by the end to be achieved. It is indisputable that the state, in pursuit of such an objective, can "alter its laws and radically change the definition of property rights and the manner in which they can be controlled and transferred. [Citation.]" (*In re Chenich* (9th Cir. BAP 1988) 87 BR 101, 106; *In re Marriage of Buol, supra,* 39 Cal.3d at p. 760 ["Vested rights are not immutable; the state, exercising its police power, may impair such rights when considered reasonably necessary to protect the health, safety, morals and general welfare of the people. [Citation.]"].) Properly characterized, then, it is apparent that retroactive application of section 4800.8 does not offend constitutional guaranties proscribing the impairment of contracts.

■ The Department also argues that section 4800.8 "was not intended to provide benefits for the heirs of a nonemployee spouse which were not available under the Retirement Plan."

Section 4800.8 only requires the equal division of such community property interest as exists in "any retirement plan, whether public or private,

including all survivor and death benefits, . . ." (§ 4800.8.) The statute does not require such plans to adopt new benefits or increase existing ones.

Apparently, the Department's real objection is that under section 4800.8, the community property interest of a nonemployee spouse is now inheritable. This, however, was precisely what the Legislature intended by abrogating the terminable interest rule. We have answered this objection in parts I and II of this opinion regarding the validity of the Legislature's action and its retroactive application in *Taylor.*

The Department also suggests that retroactive application of the statute creates new classes of beneficiaries and would "encourage[ ] any relative with a potential claim to a deceased spouse's estate to move to open the estate for the purpose of filing a claim against a surviving employee's or retiree's pension benefits." We disagree.

The statute creates no new beneficiaries but simply recognizes the legitimate interest of the nonemployee spouse in his or her community property share of the employee spouse's retirement fund. Such recognition includes the right of the estate of a predeceased nonemployee spouse to that community property share. This is the intended result of the statute and does not create a new class of beneficiaries to the plan.

Our decision must also be viewed in context. In applying the statute retroactively, we go no further than *Taylor* which limited retroactivity to those dissolution proceedings in which property rights have not yet been adjudicated, or if adjudicated where such adjudication is still subject to appellate review, or in those adjudications where the trial court has expressly reserved jurisdiction to divide pension rights. (*In re Marriage of Taylor, supra,* 189 Cal.App.3d at p. 441.) Our decision will not resurrect cases over which the court has lost jurisdiction.

Finally, the Department appears to argue that its pension fund is a municipal matter governed by the charter of the City of Los Angeles rather than by state law. The short answer to this is provided by the court in *Sonoma County Organization of Public Employees* v. *County of Sonoma, supra,* 23 Cal.3d at pages 315-316: "It has long been settled that, insofar as a charter city legislates with regard to municipal affairs, its charter prevails over general state law. [Citations.] However, as to matters of statewide concern, charter cities remain subject to state law. [Citations.]" Clearly, the equitable dissolution of community property qualifies as a matter of statewide concern.

The order is affirmed. Respondent to have its costs. Respondent's request for sanctions is denied.

George, J., and Goertzen, J., concurred.

Appellants' petition for review by the Supreme Court was denied May 31, 1990. Lucas, C. J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.